MILITARY AUDIT PROJECT et
al., Plaintiffs,

v.

George BUSH et al., Defendants.

Civ. A. No. 75–2103.

United States District Court,
District of Columbia.

March 5, 1976.

William A. Dobrovir, Washington, D. C., for plaintiffs.

Jeffrey F. Axelrad, J. Roger Edgar, Paul F. Figley, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This is a suit under the Freedom of Information Act, 5 U.S.C. § 552, against the Central Intelligence Agency and the Department of Defense. Plaintiffs seek to obtain certain material relating to the Glomar Explorer,

. . . to wit the contract, and all other documents pertaining to the financial arrangements between or among the government of the United States, any agency thereof, Hughes Tool Co., Summa Corporation and Global Marine, Inc., or any of them, in particular such documents that reflect sums paid by the government of the United States or any agency thereof to any of the other entities named above, the profits earned by any of such other entities and any provisions for disposition by the government

of the United States to any of the other named entities, with respect to the vessel "Glomar Explorer." (Complaint, para. 1).

Defendants have not yet answered, but instead filed a motion to dismiss, or, in the alternative, for summary judgment, relying on 5 U.S.C. §§ 552(b)(1), (b)(3). They have also moved pursuant to Fed.R.Civ.P. 26(c) for leave to submit material for *in camera* inspection by the Court and for all further papers filed in their case, including those hereafter presented in aid of the motion to dismiss, to be held under seal and not revealed to anyone pending final disposition of the litigation. Their proposed form of order is annexed. In particular, the Government wishes to submit two affidavits *in · camera,* one classified Top Secret and the other Secret, to support the motion to dismiss. The Government has publicly filed the very vague and conclusory affidavit of Lawrence S. Eagleburger, Deputy Under Secretary for Management of the Department of State, which asserts that "the information relevant to the United States Government case has been classified pursuant to Executive Order 11652, 3 C.F.R., Executive Order 11652 (1974 edition) on the ground that public disclosure would damage the national security, including the foreign relations of the United States."

Since the supporting material has not yet been submitted, the defendants' motion to dismiss, or, in the alternative, for summary judgment is not yet ripe for disposition, and the matter is now before the Court only on defendants' motion for *in camera* proceedings. The Government urges this Court to follow the approach adopted in *Phillippi v. CIA,* Civil Action No. 75–1265 (D.D.C. Dec. 1, 1975), *appeal pending,* No. 76–1004 (D.C. Cir.), in which such an *in camera* method was utilized. This motion is vigorously opposed by plaintiffs. The matter has been fully briefed and oral argument was had.

The Freedom of Information Act contemplates that when a citizen seeks information from the Executive Branch, the Executive may refuse to disclose if the material requested falls within various exemptions de-

lineated in the statute. The Act allows the Executive to state his reasons for withholding in general, unrevealing terms, and to ask that the underlying material be delivered to the Court, in chambers, privately for the Court's ex parte review. Informal hearings and further documentation may also be received ex parte in aid of the review. Thus a Federal Judge can be placed in an untenable position which ignores fundamental considerations of due process. Should the Court choose to proceed *in camera* in its discretion, the citizen is denied access to the papers and as a practical matter neither he nor his counsel have any opportunity to question the factual grounds on which exemption is sought. This is what the CIA and the Department of Defense propose in the formal order presented to the Court.

When this extraordinary arrangement is viewed in terms of its implications, it is readily apparent that considerations of convenience and expediency have been allowed to obscure the true role of the judiciary under our tripartite system. It has been argued before Congress and elsewhere that the courts do not have the knowledge or facilities for performing the assigned task but, whatever the merit of this position, there is a more fundamental issue.

 Is it not alien to our entire jurisprudence that courts are to function ex parte in private without benefit of the adversary process? Will it not degrade the judiciary if it is used as a mechanism for resolving statutory rights on the basis of undisclosed representations made in chambers to judges by parties having a direct personal interest in the outcome? Surely our whole jurisprudence since the Magna Carta and the abolition of Star Chamber proceedings requires that the judiciary in both fact and appearance remain neutral, independent of Executive or legislative influence. The adversary system is a well-tested safeguard for preserving the integrity of the judicial process. It is the duty of a judge wherever possible to resolve rights of citizens upon facts and arguments that are presented in an adversary context exposed to public view with all the protections fair hearing and due process provide.

We are dealing here with the right of a citizen to receive information from his government. This is a right declared by Congress. The citizen as well as the Government has rights to be protected. There is justifiable concern in the land that on some occasions the Executive Branch has withheld information, sometimes even for personal or malevolent reasons, which should be subjected to public scrutiny. There is equally justifiable concern that Federal Courts have undertaken responsibilities that were never intended by assuming policy and administrative functions that the Constitution contemplated should properly reside with the Executive or the Congress. It is a gross mistake to alleviate the first concern by exacerbating the second.

It is only in the rarest and most discrete special circumstances that a judge can properly resolve a controversy, even temporarily, ex parte. The procedures contemplated under the Freedom of Information Act go beyond any precedent. The ex parte nature of the proceeding will be perpetuated through appeal for at no time will the citizen seeking data learn the reasons it is being withheld or be given a realistic chance to present evidence that contradicts the arguments of those who desire to withhold. Some efforts to import a modicum of due process into this process have been futile. Disclosure to counsel under directions he not reveal what he saw to his client intrudes upon the lawyer-client relationship. Moreover, there are counsel whose bona fides are open to criticism and many applicants petition under the Act pro se. Nor does reference to magistrates or masters for ex parte review change the fundamental defect in the process.

There is need to re-examine this issue. The number of Freedom of Information Act cases is growing rapidly and the scope and variety of ex parte chambers work is already enormous in this jurisdiction. It should shock the conscience and offend the spirit of our jurisprudence to move the en-

tire judicial administration of this important Act into the secrecy of chambers.

Congress was apparently sensitive to these subtle but fundamental considerations, for it left it in a court's discretion whether it would or would not engage in this ex parte procedure in chambers, 5 U.S.C. § 552(a)(4)(B). *See* H.Rep. No. 93–876, 1974 U.S.Code Cong. and Adm.News, p. 6273; Comment, Judicial Review of Classified Documents: Amendments to the Freedom of Information Act, 12 *Harv. J. Legis.* 415, 441–43 (1975).

The Court is aware of the holding in *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), which contemplates a routine ex parte *in camera* proceeding for the resolution of Freedom of Information Act contests. This rule was modified by the Congress when it recognized that *in camera* proceedings are not mandatory but may be held only in the Court's discretion.

 Ex parte *in camera* proceedings are unnecessary, at least in most instances. The Government in most if not all contested cases should be able to satisfy its exemption claim in open court with sufficient specificity that the availability or unavailability of the exemption can be determined in an adversary fashion without revealing facts in documents deemed exempt. In other Freedom of Information Act cases which have come before this Court, *e. g., Washington Research Project, Inc. v. Department of Health, Education and Welfare,* 366 F.Supp. 929 (D.D.C.1973), *affirmed in part and reversed in part,* 164 U.S.App.D.C. 169, 504 F.2d 238 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *Moss v. Laird,* Civil Action No. 1254–71 (D.D.C. Dec. 7, 1971), satisfactory arrangements have been made at pretrial consistent with this approach suited to the needs of the particular case and the issues have been resolved through the traditional adversary process.

While more experience under the Act may be necessary to make all ex parte hearings useless, surely it can never be an abuse of discretion for a court to attempt resolution of these cases short of the *in camera* process. Should a particular situation arise where *in camera* review appears essential it will be time enough then to consider whether the rights of the person seeking information have been infringed and that the Act as thus applied is unconstitutional. Much will depend on the willingness of the Government agencies to avoid blanket boilerplate assertions of privilege and to develop types of indices and descriptions that enable a court to search out the truth in a public proceeding without destroying the secrecy which the Government considers it essential to maintain.

 At least that is the course this Court intends to follow. In this instance the Government's submission is woefully inadequate. There is no public index. One conclusory representation is made in brief form. There is no indication of when or how the material sought was classified or of the timing, degree or extent of declassification or recent review. There is, moreover, no indication of any effort to separate classified and unclassified information within particular documents or files. Some documentation in the area has already been made public but no explanation is given why the papers released differ from other portions of the same or related papers being withheld. The nature of the security problem asserted is not explained even in broadest hypothetical terms. These and other defects pervade the matter. There is merely an attempt by *in camera* lawyers' papers classified as Top Secret to cut off the request for information at the outset. This will not do. The Court is entitled to be better informed on a public record and the plaintiff should be able to address more concrete issues. The Court will not receive or examine affidavits *in camera* at this stage. An adequate, complete affidavit justifying exemption shall be publicly filed reciting all pertinent facts short of those that reveal any fact which the defendants believe is protected by the exemption claimed.

The proposed ex parte *in camera* order is rejected without prejudice. The Government shall show further cause in fourteen days why exemption should be granted by appropriate public representations.

SO ORDERED.