Harriet Ann **PHILLIPPI**, Appellant,

v.

**CENTRAL INTELLIGENCE AGENCY and George H. Bush, Director, Central Intelligence Agency.**

**No. 76–1004.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1976.

Decided Nov. 16, 1976.

As Amended Nov. 24, 1976.

16. *See also* Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation*, 88 Harv.L. Rev. 849 (1975).

Mark H. Lynch, Washington, D. C., with whom Larry P. Ellsworth and Alan B. Morrison, Washington, D. C., were on the brief, for appellant.

David M. Cohen, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before WRIGHT and MacKINNON, Circuit Judges, and WEIGEL,* District Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Dissenting opinion filed by Circuit Judge MacKINNON.

J. SKELLY WRIGHT, Circuit Judge:

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), *as amended* (Supp. V 1975), in which plaintiff-appellant seeks to compel the Central Intelligence Agency to disclose certain records alleged to be in its possession concerning its relationship with the *Hughes Glomar Explorer.*

In March 1975 several news organizations published stories purporting to describe a secret operation conducted by the United

---

* Of the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 292(d) (1970).

States. The central figure in these stories was the *Hughes Glomar Explorer*, a large vessel publicly listed as a research ship owned and operated by the Summa Corporation. According to the stories, the ship's actual owner and operator was the Government of the United States.

Following publication of these stories, other stories described the alleged efforts of the CIA to convince the news media not to make public what they had learned about the *Glomar Explorer*. The latter stories interested appellant, a journalist, and she filed a FOIA request for all Agency records relating to the reported contacts with the media.[1] That request was denied on two grounds. First, the Agency claimed that "any records that might exist which reveal any CIA connection with or interest in the activities of the *Glomar Explorer*; and,

indeed, any data that might reveal the existence of any such records * * *" would be classified and therefore exempt from disclosure. App. 8; *see* 5 U.S.C. § 552(b)(1).[2] Second, the Agency stated that

> the fact of the existence or non-existence of the records you request would relate to information pertaining to intelligence sources and methods which the Director of Central Intelligence has the responsibility to protect from unauthorized disclosure in accordance with section 102(d)(3) of the National Security Act of 1947 [50 U.S.C. § 403(d)(3) (1970)]. * * *[3]

App. 9. Accordingly, the Agency asserted that the information was covered by FOIA's exemption for information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).[4] Plaintiff's adminis-

---

1. Plaintiff requested

   all records relating to the Director's or any other agency personnel's attempts to persuade any media personnel not to broadcast, write, publish, or in any other way make public the events relating to the activities of the *Glomar Explorer*, including, but not limited to, files, documents, letters, memoranda, travel logs, telephone logs or records of calls made, records of personal visits, or any other records of any kind of communications.

   App. 7.

2. 5 U.S.C. § 552(b)(1) exempts from disclosure matters that are

   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order. The classification system is established by Executive Order 11652, 3 C.F.R. at 339 (1974).

3. 50 U.S.C. § 403(d)(3) provides, in relevant part,

   [t]hat the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure.

4. It is important to note that Congress has been peculiarly sensitive to expansive judicial interpretations of the exemptions to the FOIA. Through various amendments it has sought to insure that these exemptions not provide means by which government agencies could eviscerate the policy of the Act.

   In fact, in response to two different Supreme Court decisions amendments have recently been enacted which narrow the scope of each of the exemptions on which the Agency here

seeks to rely. After the decision in *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119, (1973), in which the Supreme Court construed the § 552(b)(1) (*i. e.*, "Executive order") exemption broadly and denied the plaintiffs access to the information they sought, Congress moved promptly to overrule the decision and limit the exemption. *See* 5 U.S.C. § 552(a)(4)(B) (Supp. V 1975); 5 U.S.C. § 552(b)(1) (Supp. V 1975); S.Rep. No. 854, 93d Cong., 2d Sess. 13–15 (1974). Even more recently, in the Government in the Sunshine Act, Congress limited the § 552(b)(3) exemption to the FOIA as follows:

> (b) This section does not apply to matters that are—
>
>    *   *   *   *   *   *
>
> (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

Pub.L. 94–409, § 5(b), 94th Cong. (Sept. 13, 1976). Specifically, in the discussion of the amendment in the final Conference Report it is stated, "The conferees intend this language to overrule the decision of the Supreme Court in *Administrator FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975)"—a decision on which the dissent relies and in which § 522(b)(3) was construed broadly with respect to an exemption statute not involved in this case. *See* S.Rep. No. 94–1178, 94th Cong., 2d Sess. 25 (1976); H.R.Rep. No. 94–1441, 94th Cong., 2d Sess. 25 (1976). This latest amend-

trative appeal was rejected by the Agency on the ground that existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under Sections (b)(1) and (3) of FOIA.[5] The basis for this action was the Agency's determination "that, in the interest of national security, involvement by the U.S. Government in the activities which are the subject matter of your request can neither be confirmed nor denied." App. 11.

Appellant filed her complaint in the District Court two and a half months later. She then moved to require the Agency to provide a detailed justification for each document claimed to be exempt from disclosure. *See Vaughn v. Rosen,* 157 U.S.App. D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The Government responded with a motion to dismiss or for summary judgment and a motion for leave to submit all material related to the case to the court *in camera.* The first motion was supported by two sealed affidavits, one classified secret and the other top secret. The second motion was accompanied by a public affidavit in which the Deputy Under Secretary for Management of the Department of State affirmed "that the information relevant to the United States Government case has been classified * * * on the ground that public disclosure would damage the national security, including the foreign relations of the United States." App. 26. The District Court refused to examine all of the material *in camera* but did consider the two sealed affidavits. On December 1st the court granted the Agency's motion for summary judgment on the ground that

[i]t appears to the Court that the provisions of 50 U.S.C.A. §§ 403(d)(3) and 403g [6] are applicable to this situation. Therefore, any materials which the defendants may have that fit the description of materials requested by the plaintiff are exempt from disclosure under the provision of the third exemption of the Freedom of Information Act. 5 U.S.C. § 552(b)(3). * * *

App. 2. In the same order the court denied appellant's motions to have her counsel participate in any *in camera* examination and to require the Agency to provide a *Vaughn* index.

Thus we are dealing with a case in which the Agency has refused to confirm or deny the existence of materials requested under the FOIA, and its refusal has been upheld by the District Court. In effect, the situation is as if appellant had requested and been refused permission to see a document which says either "Yes, we have records related to contacts with the media concerning the *Glomar Explorer*" or "No, we do not have any such records." On appeal appellant does not assert that the Government may never claim that national security considerations require it to refuse to disclose whether or not requested documents exist. Reply br. at 9. Rather, her principal argument, and the only question we decide, is that the Agency should have been required to support its position on the basis of the public record.

▪ It is clear that the FOIA contemplates that the courts will resolve funda-

---

ment shows plainly that Congress is determined that the exemptions to the FOIA should be interpreted narrowly.

5. The Agency based its claim to an exemption under § 552(b)(3) entirely on 50 U.S.C. § 403(d)(3), *supra* note 3.

6. 50 U.S.C. § 403g provides, in relevant part, that

[i]n the interests of the security of the foreign intelligence activities of the United States and in order further to implement the proviso

of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from * * * the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency * * *.

So far as appears from the public documents in this case, the Agency never asserted the relevance of this provision.

mental issues in contested cases on the basis of *in camera* examinations of the relevant documents. *See Department of the Air Force v. Rose*, 425 U.S. 352, 378, 96 S.Ct. 1592, 1607, 48 L.Ed.2d 11 (1976); 5 U.S.C. § 552(a)(4)(B), *as amended* (Supp. V 1975). Appellant maintains that this authority does not extend to *in camera* examination of affidavits, the procedure used below. In the peculiar context of this case we must reject this contention. When the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal. Therefore, to fulfill its congressionally imposed obligation to make a *de novo* determination of the propriety of a refusal to provide information in response to a FOIA request the District Court may have to examine classified affidavits *in camera* and without participation by plaintiff's counsel.

Before adopting such a procedure, however, the District Court should attempt to create as complete a public record as is possible. *In camera* examination has the defect that it "is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure." *Vaughn v. Rosen, supra*, 157 U.S.App.D.C. at 345, 484 F.2d at 825. In the ordinary case we have attempted to remedy this defect by requiring a detailed public justification for any claimed right to withhold a document. That justification must be accompanied by an index which correlates the asserted justifications with the contents of the withheld document. The detailed justification and index can then be subjected to criticism by the party seeking the document. If *in camera* examination of the document is still necessary, the court will at least have the benefit of being able to focus on the issues identified and clarified by the adversary process.

*See id.*, 157 U.S.App.D.C. at 346–348, 484 F.2d at 826–828. Congress has specifically approved these procedures. S.Rep. No. 93–854, 93d Cong., 2d Sess. 14–15 (1974).

■ Adapting these procedures to the present case would require the Agency to provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records.[7] The Agency's arguments should then be subject to testing by appellant, who should be allowed to seek appropriate discovery when necessary to clarify the Agency's position or to identify the procedures by which that position was established. Only after the issues have been identified by this process should the District Court, if necessary, consider arguments or information which the Agency is unable to make public.

By supplemental memorandum appellees have now adopted in this court the rationale set forth in an affidavit submitted by Brent Scowcroft, Assistant to the President for National Security Affairs, as the basis for their continuing refusal to confirm or deny the existence of any of the records requested by appellant Phillippi. Scowcroft's affidavit was submitted in the case of *Military Audit Project v. Bush*, 418 F.Supp. 876 (D.D.C.1976), in which the plaintiff sought copies of the contracts for construction and operation of the *Glomar Explorer*. The Scowcroft affidavit, which was preceded in that case by a less informative affidavit from the Government, asserted that the requested documents could not be released, nor their existence confirmed or denied, because "[o]fficial acknowledgment of the involvement of specific United States Government agencies would disclose the nature and purpose of the Program and could, in my judgment, severely damage the foreign relations and the national defense of

---

7. Since the "document" the Agency is currently asserting the right to withhold is confirmation or denial of the existence of the requested records, we stress that we are not requiring, at this stage, the *Vaughn* index requested by appellant. If the District Court should decide on remand that the Agency's refusal to confirm or deny the existence of the requested records is unjustified, the standard *Vaughn* procedures,

the United States."[8] After the filing of the Scowcroft affidavit in the District Court, interrogatories propounded by the plaintiffs there were answered by Mr. Scowcroft.

Of course, the rationale that Mr. Scowcroft set forth and which appellees here seek to adopt differs significantly from the argument on which the Agency initially relied.[9] Nevertheless, the Government suggests that the Scowcroft affidavit, which allegedly contains all the information that can possibly be made available.[10] merely elaborates on the "basic proposition" the appellees have urged all along.[11] Appellees' supplemental memorandum at 4. For this reason, we are told, remand would be futile.

We reject this conclusion for two reasons. First, we are not convinced that appellant, through appropriate discovery[12] and memo-

---

including preparation of a detailed index to the requested records, if any, would then apply.

8. Affidavit of Brent Scowcroft, Assistant to the President for National Security Affairs, in appellees' supplemental memorandum at 4a.

9. The Government was forced to retreat from its original refusal to confirm or deny any involvement with the *Glomar Explorer* by its disclosures in a tax case in Los Angeles. *See United States v. County of Los Angeles*, Civil Action No. CV 75–2752–R, C.D.Cal.

10. Affidavit of Brent Scowcroft, *supra* note 8, appellees' supplemental memorandum at 3a. Mr. Scowcroft maintains that *only* the fact that the Government owns the *Glomar Explorer* can be or has been disclosed. He asserts that

disclosure of the alleged "fact that the United States was the sponsor of the activity involving the Hughes Glomar Explorer" *would* damage our national security and foreign relations. * * *

Brent Scowcroft's Answers to Plaintiffs' Interrogatories, Answer to Interrogatory No. 22, *filed in Military Audit Project v. Bush*, 418 F.Supp. 876 (D.D.C.1976) (emphasis in original). Yet documents released by the Government in *United States v. County of Los Angeles, supra* note 9, indicate that the vessel was to be operated in a "recovery program" conducted for the United States under " 'commercial' cover." Appellant's reply br. at Add. B–20; *see id.* at B–18 (United States to indemnify agent for liability "arising out of operational performance under this Agreement"); *id.* at B–25 ("WHEREAS the Sponsor [the United States Government] desires to enter into a covert contract with the Contractor for the delivery of the integrated system and the operation thereof to perform the mission and WHEREAS due to necessity for cover purposes to operate the mission under the guise of an overt commercial deep sea mining project * * * "); *id.* at B–26, B–29. *See also id.* at B–35 (affidavit of Summa Corporation official, filed in support of Government's motion for summary judgment, stating that "the United States Government has had and exercised full control and direction of the Hughes Glomar Explorer"); *id.* at B–38 to B–39 (affidavit of Global Marine Inc. official, filed in support of Government's motion for summary judgment, stating that vessel has been under dominion and operational direction of United States Government from its launch until present time); *id.* at B–41 to B–42 (affidavit of ship's master, filed in support of Government's motion for summary judgment, stating that vessel had been used only in performance of a United States Government classified project).

11. The Government states this proposition to be: "there is a difference in international affairs between rumor and speculation and official confirmation of governmental involvement in a particular activity." Appellees' supplemental memorandum at 4. *As so stated, this* proposition resembles the original stand taken by the Agency. It is clear, however, that avoiding "official confirmation of governmental involvement" with the *Glomar Explorer* is no longer possible. *See* note 10 *supra.*

12. As we have indicated, on remand appellees will be asked to submit a public justification, which is as detailed as is possible, for refusing to confirm or deny the existence of the requested records. Appellant will then have the opportunity to test that justification through appropriate discovery. Assuming that the Government provides no more information than is contained in the public affidavits submitted in *Military Audit Project*, appellant's discovery would presumably focus on the less than self-evident relationship between confirmation or denial of the existence of records relating to contacts between the Agency and the media and the disclosure, beyond that already officially made, of "the nature and purpose of the Program." For example, appellant might seek to learn the process by which it was determined that confirming or denying the existence of records relating to media contacts by the Agency *would indicate more about the na*ture of the project than do the documents filed in *United States v. County of Los Angeles. See* note 10 *supra.* Alternatively, appellant might inquire as to the process by which it was determined that confirming or denying the existence of the requested records would constitute greater "[o]fficial acknowledgement of the involvement of specific United States Government agencies," *see* pp. ——–—— of 178

randa, will be unable to convince the District Court to reject the Agency's position.[13] Second, and more important, the course the Government urges us to take is inappropriate. Even if the Agency prevails on remand on the basis of the arguments made to the *Military Audit Project* court, we cannot sustain summary judgment for the appellees here on the basis of documents filed

U.S.App.D.C., p. 1013 of 546 F.2d *supra,* than has already taken place. For example, Mr. Scowcroft has indicated that a "senior official" of the Central Intelligence Agency was on the National Security Council committee which determined to declassify some information related to the *Glomar Explorer.* Brent Scowcroft's Answers to Plaintiffs' Interrogatories, *supra* note 10, Answer to Interrogatory No. 17. Moreover, the Director of Central Intelligence has a statutory responsibility to protect intelligence sources and methods from unauthorized disclosure. 50 U.S.C. § 403(d); *see* note 14 *infra.* That responsibility is apparently not limited to keeping Agency-sponsored activities secret. Appellant might inquire how it was determined that confirmation or denial of contacts with domestic news media, undertaken pursuant to the Director's statutory responsibility, would disclose "the involvement of specific United States Government agencies" in the project which the Director sought to keep from being publicized.

13. Indeed, the Agency itself might change its position if required to defend that position in public to the extent consistent with the national security. It has already revised its rationale for withholding information once during the pendency of this litigation, and its actions appear to conflict with its currently stated position. *See* note 10 *supra.*

14. The District Court's order relied on the third exemption to the FOIA and on 50 U.S.C. §§ 403(d)(3) and 403g. Appellant contends that § 403(d)(3) is not a statutory authorization to withhold information within the meaning of 5 U.S.C. § 552(b)(3). We reject this argument. *See* S.Rep. No. 93–854, 93d Cong., 2d Sess. 16 (1974); H.R.Rep. No. 93–1380, 93d Cong., 2d Sess. 12 (1974). If the Agency can demonstrate, *see* 5 U.S.C. § 552(a)(4)(B) (Supp. V 1975), that release of the requested information can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods, it is entitled to invoke the statutory protection accorded by 50 U.S.C. § 403(d) and 5 U.S.C. § 552(b)(3).

We understand the District Court's citation of 50 U.S.C. § 403g also to be a reference to the Agency's authority and responsibility to prevent unauthorized disclosures of intelligence sources and methods. *See* S.Rep. No. 93–854,

in a separate case concerned with different, although related, issues. Plaintiffs are entitled to an opportunity to conduct their own litigation.

The judgment of the District Court is reversed and the case is remanded for further proceedings in conformity with this opinion.[14]

*supra,* at 16; H.R.Rep. No. 93–1380, *supra,* at 12. In its brief, however, the Agency suggests that § 403g's reference to withholding information about the "functions * * * of personnel employed by the Agency," *see* note 6 *supra,* allows the Agency to refuse to provide any information at all about anything it does. *See* appellees' br. at 26–29. This argument, on which our dissenting colleague relies, would accord the Agency a complete exemption from the FOIA. We do not think that § 403g is so broad. *Cf. Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1367–1368 (4th Cir.), *cert. denied,* 421 U.S. 992, 95 S.Ct. 1555, 43 L.Ed.2d 772 (1975).

Section 403g is intended "further to implement the proviso of section 403(d) * * * that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure * * *." This limited purpose is explicitly recognized in the congressional reports cited above, and there is no indication that the section is to be read as a provision authorizing the Agency to withhold any information it may not, for some reason, desire to make public. Moreover, the wording of the section strongly suggests that the authority it confers is specifically directed at any statutes that would otherwise require the Agency to divulge information about its internal structure. The legislative history of the section supports this limited interpretation. *See* S.Rep. No. 106, 81st Cong., 1st Sess. 4 (1949); H.R.Rep. No. 160, 81st Cong., 1st Sess. 5 (1949). Finally, we note that the Agency itself apparently considered § 403g a limited provision inapplicable to this case, since it did not assert the section as a basis for denying appellant's FOIA request in either its administrative responses to appellant or its filings with the District Court.

On remand the District Court may also consider the applicability of the FOIA's first exemption, which applies to classified information. The Agency claimed this exemption in its first response to appellant and at all subsequent stages of this proceeding. Since information which could reasonably be expected to reveal intelligence sources and methods would appear to be classifiable, *see* Executive Order 11652, *supra* note 2, 3 C.F.R. at 340, and since the Agency has consistently claimed that the

*So ordered.*

MacKINNON, Circuit Judge (dissenting):

The foregoing opinion would treat this demand on the Central Intelligence Agency (CIA) for "all records" of a certain character "relating to the activities of the *Glomar Explorer.* . . ." (App. 7) as though it were a normal request under the Freedom of Information Act (FOIA). But it is not. By statute the CIA is specifically exempt from "any other law" which would require it to disclose any of the "functions . . . of [its] personnel." This is not a discretionary statute[1] and the exemption is not from *disclosure* after some involved procedure, but is an exemption "from . . . the *provisions* of *any other* law" which would so require.

Appellant seeks to use the FOIA as the base for her demand but the disposition of her request is controlled by the specific provisions of the CIA statute. The Act establishing and controlling its operations provides that the CIA

> shall be *exempted* from . . . the provisions of *any* other law which requires the *publication* or *disclosure* of the . . . *functions* . . . of personnel employed by the Agency.[2]

The Freedom of Information Act recognizes this special statute when it provides that its general requirements that certain agencies make available to the public certain information:

> does not apply to matters that are—
>
> \*     \*     \*     \*     \*     \*
>
> (3) specifically exempted from disclosure by statute.[3]

5 U.S.C. § 552(b)(1)(A).

Thus, when the foregoing opinion attempts to apply FOIA procedures to appellant's request by its assertion: "It is clear the FOIA contemplates that the courts will resolve fundamental issues in contested cases on the basis of *in camera* examinations of the relevant documents," p. —— of 178 U.S.App.D.C., p. 1012 of 546 F.2d *supra*, it fails to recognize the "exempt" status of the Agency, *created*, not only by the FOIA which recognizes the special status of the CIA, but created primarily by its own separate special statute.

Since the CIA is thus specifically exempted from the FOIA by the Act creating it, the CIA need only assert this fact when it refuses "the publication or disclosure of the . . . *functions* . . . ." etc.[4] requested. Once the court determines that fact nothing further is necessary. As Justice Stewart said in his concurring opinion in *FAA Administrator v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which involved a factual situation

---

requested information has been properly classified, inquiries into the applicability of the two exemptions may tend to merge.

1. 50 U.S.C. § 403g (1970) provides:

> In the interests of the security of the foreign intelligence activities of the United States and in order further to implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of section 654 of Title 5, and the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency: *Provided,* That in furtherance of this section, the Director of the Bureau of the Budget shall make no reports to the Congress in connection with the Agency under section 947(b) of Title 5.

2. *Id.* (emphasis added).

3. 5 U.S.C. § 552(b) (1970), *as amended* (Supp. V, 1975) provides:

> (b) This section does not apply to matters that are—
>
> (1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;
>
> (2) related solely to the internal personnel rules and practices of an agency;
>
> (3) *specifically exempted from disclosure by statute.* . . .

(Emphasis added). Subsection (b)(1)(A) also furnishes a ground for exemption in this case but that exemption is less broad and might involve a more elaborate showing than is required under subsection (b)(3).

4. 50 U.S.C. § 403g (1970).

less favorable to the exemption than the CIA statute:

> [T]he only question "to be determined in a district court's *de novo* inquiry is the factual existence of such a statute, regardless of how unwise, self-protective, or inadvertent the enactment might be." *EPA v. Mink, supra,* [410 U.S. 73] at 95 n, [93 S.Ct. 827, at 840, 35 L.Ed.2d 119.]

422 U.S. at 270, 95 S.Ct. 2140, 2149. Justice Marshall also concurred in the opinion by Justice Stewart.

The procedural aspects of the Freedom of Information Act thus need not be complied with by the CIA because when the Act provides that the Agency is "*exempted from the . . . provisions of any other law . . .,*" etc.,[5] it means the entire law.

In this case, it is clear that complying with appellant's request could result in the "publication and disclosure of the . . . *functions*" of the Agency in a highly secret activity definitely related to national security. That is precisely the type of information the Act was designed to protect.[6] The information here requested from the Agency was plainly *not* information that it was required to publish or disclose. On the facts here present the Agency was permitted to rest on the showing made on the factual existence of the statute and it was not required to indulge in any elaborate procedure to over-prove the obvious.

**5.** *Id.*

**6.** The Agency's reply of May 21, 1975, denying appellant's request stated:

> Mr. Duckett has determined that, in the interest of national security, involvement by the U.S. Government in the activities which are the subject matter of your request can neither be confirmed nor denied. Therefore, he has determined that the fact of the existence or non-existence of any material or documents that may exist which would reveal any CIA connection or interest in the activities of the Glomar Explorer is duly classified Secret in accordance with criteria established by Executive Order 11652. Acknowledgement of the existence or non-existence of the information you request could reasonably be expected to result in the compromise of important intelligence operations and signifi-

*FAA Administrator v. Robertson, supra,* held that the Federal Aviation Administration, by virtue of the subsection (3) exemption of the Freedom of Information Act, was not required to comply with the demand that it produce certain Systems Worthiness Analysis Program Reports made by the airlines to the FAA as part of its safety program. Its claim of exemption was based on 49 U.S.C. § 1504 (1970), which provides:

> Any person may make written objection to the public disclosure of information contained in any . . . report . . . filed pursuant to the [FAA Act] . . . Whenever such objection is made, the Board or Administrator shall order such information withheld from public disclosure when, *in their judgment,* a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public.

*Robertson* held that this *discretionary* statute satisfied the terms of subsection (3) of the FOIA.

Following the *Robertson* decision, the 94th Congress amended subsection (3) to read as follows:

> (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to

cant scientific and technological developments relating to the national security, and might also result in a disruption in foreign relations significantly affecting the national security.

(J.A.11).

The complaint also asserted:

He [the Agency] further alleged that the fact of the existence or non-existence of such records would relate to information pertaining to intelligence sources and methods which the Director of Central Intelligence has the responsibility to protect from unauthorized disclosure in accordance with section 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403(d)(3), and therefore such records fall within exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3).

(J.A.14).

particular types of matters to be withheld.

Pub.L. 94–409, § 5(b), 90 Stat. 1247 (Sept. 13, 1976).

This amendment does not become effective until 180 days after the date of its enactment, so it is not controlling here; but it is important to note because it plainly indicates that, even after it does become effective, the CIA exemption will still continue. In fact, it will even be strengthened because exemption (3) will then specifically exempt from disclosure all matter in those instances where the

> *statute* . . . requires that the matters be withheld from the public in such a manner as to leave *no discretion* on the issue . . . .[7]

(Emphasis added). The CIA *statute* is such a statute because it is not couched in discretionary terms, but specifically "leave[s] no discretion" that

> the Agency shall be exempted from . . . the provisions of *any other law* which require the . . . disclosure of the . . . functions . . . of personnel employed by the Agency.

50 U.S.C. § 403g (1970).

That the present request would violate this statute, both as presently interpreted and as it would be interpreted after the 1976 amendment, is too clear to require further discussion. The CIA statute was designed specially to prevent what my colleagues' opinion would require—*disclosing* top secret information in order to protect it from disclosure. It is sufficient that the agency has pointed to the applicable statute.

I respectfully dissent.

---

**7.** It is not necessary here to discuss the applicability of (3)(B).