Marc J. MEDOFF, Plaintiff,

v.

UNITED STATES CENTRAL INTELLI-GENCE AGENCY, Washington, D. C., and Stansfield Turner, Director, United States Central Intelligence Agency, Defendants.

Civ. No. 78–733.

United States District Court,
D. New Jersey.

Dec. 29, 1978.

Howard T. Rosen, American Civil Liberties Union of New Jersey, by William J. Balcerski, Newark, N. J., for plaintiff.

Daniel J. Metcalfe, Atty., U. S. Dept. of Justice, Washington, D. C., by Carolyn E. Arch, Asst. U. S. Atty., Newark, N. J., for defendants.

## OPINION

LACEY, District Judge.

The plaintiff Marc J. Medoff was, at all times pertinent to this action, an undergraduate student at the Teaneck campus of Fairleigh Dickinson University [FDU] and editor-in-chief of the school newspaper, The Gauntlet. The plaintiff seeks disclosure by the defendant, Central Intelligence Agency [CIA], pursuant to the Freedom of Information Act [FOIA], 5 U.S.C. § 552, of certain documents allegedly contained in the CIA's files.

On February 5, 1977, in an effort to determine the existence and extent of contacts between FDU, its staff and faculty, and the CIA, the plaintiff filed an FOIA request for access to "all past and present contractual arrangements or agreements and personnel relationships between the CIA and Fairleigh Dickinson University . . . ." (Complaint Ex. A). On June 15, 1977 the plaintiff filed an additional request for "a copy of all files that the CIA has on contacts, approaches, and surveillance, that it has conducted with students, faculty, staff, or administrators, at Fairleigh Dickinson University . . . ." (Complaint Ex. B).

The plaintiff's brief indicates that, by letter of February 23, 1977, Andrew T. Falkiewicz, Assistant to the Director of the CIA, admitted that the CIA maintains several types of relationships with academic institutions throughout the country, but that these relationships are usually kept confidential, occasionally at the request of the CIA but more often at the request of the individual institution involved. This letter does not appear of record and has not been considered in the decision of this motion. The foregoing summary of its contents is merely provided as background.

By letter of July 1, 1977 (Complaint Ex. C) the plaintiff was advised that his requests for access to CIA documents had been denied. The letter indicated that a search of the CIA's files had disclosed some material which originated with the National Security Agency [NSA] and that the plaintiff's request, insofar as such material was concerned, had been referred to that agency for its independent review. The letter continued:

Any additional records, *if they exist,* which would be responsive to your request and which reveal any CIA connection with or interest in matters relating to those set forth in your request and, indeed, *any data that might reveal the existence of any such additional records* would be duly classified under criteria set forth in Executive Order 11652. Accordingly, and pursuant to the authority of exemption (b)(1) of the Freedom of Information Act, this is to advise that this Agency will not grant access to any additional records *that may exist* which might be responsive to your request. *By this answer, we are neither denying nor confirming that any such additional records exist.*

*Id.* (emphasis added)

As required by the FOIA, the denial letter advised the plaintiff of his right to appeal. He availed himself of this right by letter of July 25, 1977. (Complaint Ex. D). The decision was affirmed, on November 10, 1977, by the CIA's Information Review Committee (Complaint Ex. E), the highest available level of administrative recourse. (Affidavit of John F. Blake [Blake affidavit], ¶ 5). In the same letter the plaintiff was advised that the NSA had determined that the material referred to it by the CIA did not fall within the scope of the plaintiff's request.

The plaintiff availed himself of his right to judicial review of the adverse administrative determination by filing the instant action. 5 U.S.C. § 552(a)(4)(B). Having exhausted his administrative remedies, the plaintiff is properly before this court.

Plaintiff is now here on a two-pronged motion for an order requiring the CIA to provide (1) "a detailed justification for any allegation that the documents requested by plaintiff in his Complaint are exempt from disclosure . . . including an itemization and index which correlates specific statements in such justification with actual portions of the requested documents," pursuant to *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and (2) a "detailed justification for their claim that they cannot confirm or deny the existence of the requested documents," pursuant to *Phillippi v. CIA,* 178 U.S.App.D.C. 243, 546 F.2d 1009 (1976).

The defendants initially submitted, allegedly in satisfaction of the relief requested by the motion, the affidavit of John F. Blake, Deputy Director of the CIA and Chairman of that agency's Information Review Committee. This first Blake affidavit failed to provide any more information about specific documents than the plaintiff had been given at the administrative level: "[T]he CIA neither confirms nor denies the existence of a confidential relationship with any institution, its personnel or students." (¶ 15). The refusal to provide specific information, the affidavit explains, is based on the vital nature of academic contacts to the CIA mission (¶¶ 7, 8, 10, 12), the need for confidentiality in order to maintain academic contacts (¶¶ 12, 14), and the position that any admission of the existence of contacts with a particular institution, even by implication, would permit identification of "classified information, intelligence sources and methods," contrary to the national interest in maintaining an effective intelligence service (¶ 14).

Following oral argument before this court, the Blake affidavit was supplemented by another affidavit of Mr. Blake [Supplemental affidavit] intended "to clarify certain information therein and to present further information to the Court and to the plaintiff." (Supplemental affidavit, ¶ 1). In this affidavit Mr. Blake distinguishes between information concerning "overt" and "covert" CIA activities. (¶ 2). The affidavit fails to define the distinction between overt and covert. Neither does it refer the court to any statutory or common law definition of the terms. Nonetheless, the Supplemental affidavit goes on to state that a second search of CIA files revealed three "overt" documents, "form-type communications from the placement office" of FDU (¶ 5), all of which have been turned over to the plaintiff.

In view of the court's disposition of the instant motion, it is unnecessary to reach the validity of the "overt-covert" distinction at this point. Assuming the validity of the distinction, it is noted, however, that the CIA's position with respect to covert documents remains unchanged from that expressed in the first Blake affidavit. The Supplemental affidavit states, at ¶ 6:

As to documents concerning covert CIA activities, if any, it is axiomatic that *both* their *existence* (or non-existence) and relevant *details* (if any) must remain secret. Any listing, such as contemplated in a *Vaughn* Motion [sic], regardless of the detail and notwithstanding a withholding of the documents, would reveal at a minimum the existence of the covert activity, if not some details. Thus, whenever a FOIA request is received which inquires into an activity which, if it existed, would constitute a covert CIA activity, then the Agency must respond by neither confirming nor denying the existence of records.

The Supplemental affidavit reiterates the existence of some covert contacts between CIA's Directorate of Operations and some academic institutions, but refuses to specify the nature of those contacts or whether they exist between the CIA and FDU.

■ It is noted at the outset that the plaintiff's request must be decided solely on the basis of the applicable statutory criteria. It does not implicate broader issues of "academic freedom," *see generally Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Sweezy v. New Hampshire,* 354 U.S. 234, 263, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) (Frankfurter, J., concurring). Moreover, while the plaintiff sues not only as an individual, but as editor-in-chief of his college newspaper, no first amendment issue emerges. Thus, while it seems apparent that plaintiff wants the information which is sought herein for publication in the college newspaper, he does not contend that such use, if intended, enhances his FOIA rights to obtain the materials sought.

■ It is well-established that FOIA is broadly conceived, *NLRB v. Robbins Tire &*

*Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), and its basic policy is in favor of disclosure, *NLRB v. Robbins Tire & Rubber Co., supra; Dept. of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Committee on Masonic Homes v. NLRB,* 556 F.2d 214, 218 (3d Cir. 1977). Accordingly, disclosure requests must be construed liberally by this court. In 5 U.S.C. § 552(b), however, Congress enumerated nine exemptions from the otherwise mandatory disclosure requirements in order to protect specified confidentiality and privacy interests. When an agency attempts to rely on an exemption, it carries the burden of proving the exemption's applicability. The statute provides that on review of an administrative determination adverse to the applicant

the [district] court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

5 U.S.C. § 552(a)(4)(B).

The CIA relies on two exemptions in support of its refusal to comply with the plaintiff's FOIA request. It places primary reliance on 5 U.S.C. § 552(b)(3) [exemption 3], which exempts materials

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld.

The specific exempting statutes upon which the CIA relies are 50 U.S.C. § 403(d)(3) and 50 U.S.C. § 403g. The former provides, in pertinent part, that "the Director of Central Intelligence shall be

responsible for protecting intelligence sources and methods from unauthorized disclosure." Section 6 of the Central Intelligence Agency Act of 1949 [§ 403g] states, in pertinent part:

> In the interests of the security of the foreign intelligence activities of the United States and in order to further implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of section 654 of Title 5, and the provisions of any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

It has been unanimously held that both §§ 403(d)(3) and 403g are "precisely the type of statutes comprehended by exemption (b)(3)." *Goland v. CIA,* No. 76–1800, slip op. at 17 (D.C.Cir. May 23, 1978), *quoting Weissman v. CIA,* 184 U.S.App. D.C. 117, 565 F.2d 692, 694 (1977). *Accord Baker v. CIA,* 188 U.S.App.D.C. 401, 580 F.2d 664 (1978); *Richardson v. Spahr,* 416 F.Supp. 752, 753 (W.D. Pa.) *aff'd,* 547 F.2d 1163 (3d Cir. 1976). *See Phillippi v. CIA, supra* at 1015 n.14. In this regard it is instructive to note that in *FAA Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), the Supreme Court held that a statute giving an agency broad discretion to withhold information "in the interest of the public" qualified as an exemption under the predecessor of the current exemption 3.[1] In response, Congress in 1976 amended exemption 3 to provide the two-pronged test currently embodied in the statute. *See* p. 4, *supra.* In *Goland v. CIA, supra,* at 18–19, the court stated:

> There is nothing on the face of amended Exemption 3, or in its legislative history, to suggest that Congress in 1976 intended to upset the well-established Exemption 3

status of the CIA's protective statutes. Both § 403(d)(3) and § 403g "refer[ ] [sic] to particular types of matters to be withheld"—namely, information respecting intelligence sources and methods. Rep. Abzug, the amendment's primary sponsor in the House, explicitly stated on the floor that § 403g was one of the statutes intended to qualify under the new Exemption 3. The only courts to consider the issue have held that the amendment left the Exemption 3 status of §§ 403(d)(3) and 403g unimpaired. Scholarly commentators have reached the same conclusion.

(Footnotes omitted)

Indeed, the suggestion that the 1976 amendment implicitly overruled *Weissman* and *Phillippi,* and thus removed § 403g from the ambit of exemption 3, has been emphatically rejected. *National Commission on Law Enforcement and Social Justice v. CIA,* 576 F.2d 1373 (9th Cir. 1978). *Cf. Caplan v. Bureau of Alcohol, Tobacco & Firearms,* 587 F.2d 544 (2d Cir. 1978) (Congress did not intend to provide for release of material which would undermine enforcement of the criminal law).

■ Thus, the issue is whether the CIA is entitled to rely, under the facts of this case, on §§ 403(d)(3) and 403g to come within the ambit of exemption 3. It is this court's responsibility to make that determination *de novo.* Insofar as this is an exemption 3 case, however, this court's determination may be narrower than it might be with respect to other exemptions. The court here need only determine the existence of a relevant statute, no matter "how unwise, self-protective, or inadvertent [it may] be," *EPA v. Mink, supra* at 95 n.*, 93 S.Ct. at 840 (Stewart, J., concurring), and the inclusion of the withheld material within the statute's coverage. *Goland v. CIA, supra* at 20. The existence of relevant statutes is undisputed. The instant *Vaughn* and *Phillippi* motions are directed to the development of a sufficient record upon which to make the

---

1. Exemption 3 as originally written states that "[T]his section does not apply to matters that are—specifically exempted from disclosure by statute."

second determination, whether the facts support the CIA's reliance on the statutes.

█ The determination may, in an appropriate situation, be made solely on the basis of affidavits and without resort to discovery or *in camera* inspection of the material. *Id.; National Commission on Law Enforcement and Social Justice v. CIA, supra* at 1376–77; *Baker v. CIA, supra* at 669. In cases involving issues of national security, Congress has instructed the courts to accord "substantial weight" to agency affidavits. S.Rep.No.93–1200, 93rd Cong., 2 Sess. 12 (1974) (Conference Report); 120 Cong.Rec. 36,870 (1974) (remarks of Senator Muskie); *Weissman v. CIA, supra* 184 U.S.App.D.C. at 122 n.10, 565 F.2d at 697 n.10.

█ The two requests made by the plaintiff must be treated separately. His first request, that of February 5, is reasonably specific and susceptible to but one interpretation. Plaintiff wants disclosure of all documents reflecting who at FDU is or was employed by the CIA. Such materials are clearly within the protective scope of 5 U.S.C. § 403g. *See generally Baker v. CIA, supra.* While the instant matter is not yet before the court on defendant's motion for summary judgment, I conclude that there is no basis in law upon which the February 5 request may be sustained. Accordingly, I deny as to it the *Vaughn* and *Phillippi* motions.

█ The plaintiff's second request, that of June 15, 1977, is considerably broader than the first. The June 15 request seeks "all files that the CIA has on contacts, approaches, and surveillance, that it has conducted with students, faculty, staff, or administrators" at FDU. This request fails to provide this court with sufficient information to evaluate the need for a *Vaughn* index and *Phillippi* affidavit. The difficulty faced by the court is not, as the plaintiff contends, with the response of the CIA, but rather with the vagueness of the plaintiff's request. Nowhere in the June 15 request are the terms "contacts," "approaches," or "surveillance" defined. For instance, the term "contacts" may reasonably be read in at least two ways. It may refer to contacts between the CIA and FDU personnel in contemplation of an employment agreement between the parties. Were this the case, the "contact" would likely be exempt from disclosure pursuant to § 403g for precisely the same reasons as I have already determined the February 5 request to be exempt. On the other hand, "contact" could refer to a particular FDU employee providing information to the CIA, i. e., "contact" in the sense of a provider of undercover information. Were this the case, the information might well be exempt under 50 U.S.C. 403(d)(3), or might be classified pursuant to executive order 11652 and thus exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1). The salient point is that this court cannot make an evaluation of the sufficiency of the CIA's response without first understanding the nature of the plaintiff's request.

The same holds true for the term "approaches." If the reference is, for instance, to overtures made by the CIA to FDU faculty to undertake employment with the CIA for the purpose of conducting a study, it seems apparent that § 403g would apply. If, however, "approaches" means something else, the exemptions which have been invoked by the CIA in this case may or may not apply.

Finally, the meaning of "surveillance" as used in the June 15 request is far from clear. The general tenor of the plaintiff's request, and the comments of his counsel at oral argument, make it reasonable to infer that the plaintiff's primary concern is with domestic surveillance of FDU personnel by the CIA. It is not specified whether this might be photographic surveillance, direct personal surveillance, or electronic surveillance. On the other hand, the wording of the request, "surveillance conducted *with*" FDU personnel, leads to the completely different inference that the plaintiff seeks information concerning surveillances which FDU personnel might have conducted on behalf of the CIA. Again, this court cannot reach the question of the sufficiency of the CIA's response until the nature of the request is made clear.

The CIA has not raised lack of specificity as a defense in this action. Its failure to do so has no bearing on the outcome of this motion. Indeed, it could not do so consistent with the position it has taken that it can neither confirm nor deny the existence of responsive documents.

In light of the foregoing, it is unnecessary to inquire into the nature of the additional relief appropriate, if any, were the court to have found the requests sufficient.

For all the foregoing reasons, the plaintiff's motion pursuant to *Vaughn* and *Phillippi* is denied as to the February 5 request. As to the June 15 request, the motion is denied without prejudice to renewal should the plaintiff decide to submit sufficiently specific supplementary FOIA requests.