**Alan Jules WEBERMAN, Plaintiff,**

v.

**NATIONAL SECURITY AGENCY,
Defendant.**

**No. 77 Civ. 5058 (CLB).**

United States District Court,
S. D. New York.

Feb. 6, 1981.

---

American Civil Liberties Union Foundation by Charles S. Sims, New York City, for plaintiff.

John S. Martin, U. S. Atty. by Leslie Bennett, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Familiarity with prior proceedings in this FOIA action is assumed. *See Weberman v. NSA*, 490 F.Supp. 9 (S.D.N.Y.1980), remanded on appeal by an unpublished order of the Court of Appeals dated December 18, 1980. Pursuant to that latter order the case is now before this Court on remand for further proceedings pursuant to the mandate of the Court of Appeals.

Plaintiff describes himself as a serious historian, and author of a published work entitled "Coup D'Etat in America," interested in acquiring additional knowledge concerning an historical event of legitimate public interest; the assassination on November 22, 1963 at Dallas, Texas, of President John F. Kennedy. He seeks a copy of a document described by him as a telegram or message sent by Jack Ruby's brother, Earl Ruby, from Cobo Cleaners, 18135 Livernois, Detroit, Michigan to Havana, Cuba on April 1, 1962.

By the memorandum decision cited above, dated April 3, 1980, adhered to on reargument on June 4, 1980, the Court directed disclosure of whether or not the message referred to in the complaint exists, and if it does, that a copy be furnished to plaintiff.

In the course of those proceedings, this Court declined the Government's offer to submit an identified classified "Top Secret" affidavit of Michie F. Tilley, NSA's Director of Policy and Liaison ("the Top Secret affidavit") for review *in camera*. This "Top Secret" affidavit is represented as explaining in greater detail, the potential harm to national security that would arise if NSA were forced to disclose the 1962 telegram, or confirm or deny its existence in this case.

This Court declined as a matter of discretion to review the Top Secret affidavit on an *ex parte* basis, for reasons set forth at page 17 of 490 F.Supp. which the Court continues to regard as valid, and with which the reader's familiarity is assumed. These

arguments, however, found little favor with the Court of Appeals, which held: [1]

"[t]his court is convinced that an *in camera* review of the Top Secret Tilley affidavit is required. Although, in general, a decision to review documents *in camera* in FOIA cases is a discretionary one, 5 U.S.C. § 552(a)(4)(b), it appears that on the facts of this case, Judge Brieant abused his discretion. In FOIA suits where a party seeks information relating to NSA signals intelligence missions, '[h]arm could follow from the disclosure of any material that might help to identify the communications intercepted by NSA.' *Hayden v. National Security Agency*, 608 F.2d 1381, 1385 (D.C.Cir. 1979). Thus, we find that the NSA supplied the district court with 'as complete a public record as is possible,' *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1013 (D.C.Cir.1976). In these situations, therefore, it is 'necessary and appropriate' to review the submitted affidavit *in camera. Hayden v. National Security Agency, supra* at 1385."

The Court of Appeals then "ordered adjudged and decreed that the matter is remanded . . . . for *in camera* consideration of the Top Secret affidavit submitted by NSA." This mandate was not received in the district court until January 23, 1981.

In the meantime, plaintiff moved by motion docketed January 9, 1981, originally returnable January 26, 1981 but submitted on February 5, 1981, for "an order permitting one of plaintiff's counsel [Mark H. Lynch, Esq.] to participate in the *in camera* examination." In support of that motion, attorney Lynch shows by his affidavit that, fortuitously he has been cleared in the past by "the government" for access to secret data under protective orders issued in prior unrelated First Amendment litigation, including *United States v. Snepp*, 440 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) and is currently cleared by the CIA for purposes, *inter alia*, of "negotiating alternative language" for manuscripts of certain unnamed former CIA operatives who seek clearances for publication from their former employer in the aftermath of the *Snepp* litigation.

In his memorandum of law submitted in support of the motion, plaintiff argues that this Court's concern with the "inherent unfairness of *ex parte* proceedings * * * * can be ameliorated in this case by permitting [Mr. Lynch] to participate in the examination of the affidavit, thereby preserving the adversarial process." The memorandum asserts that "There is no doubt that the Court has the authority to permit such participation, and it is clearly appropriate in this case."

1. This holding was issued under a disclaimer which reads:

"N.B. Since this statement does not constitute a formal opinion of this court and is not uniformly available to all parties, it shall not be reported, cited or otherwise used in *unrelated* cases before this or any other court." (Emphasis added.)

This disclaimer is issued under the Local Rules of the United States Court of Appeals for the Second Circuit, § 0.23, which provides:

"§ 0.23. Dispositions in Open Court or by Summary Order:

The demands of an expanding caseload require the court to be ever conscious of the need to utilize judicial time effectively. Accordingly, in those cases in which decision is unanimous and each judge of the panel believes that *no jurisprudential purpose would be served by a written opinion*, disposition will be made in open court or by summary order.

Where a decision is rendered from the bench, the court may deliver a brief oral statement, the record of which is available to counsel upon request and payment of transcription charges. Where disposition is by summary order, the court may append a brief written statement to that order. Since these statements *do not constitute formal opinions of the court and are unreported and not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court.*"

Since this memorandum order is not quoting the summary order in an *unrelated case*, but rather, in the *same case* on remand, and because reference to it is necessary to explain the decision of this Court on this motion following remand, we believe it permissible to quote from the *summary order notwithstanding the local rule.*

■ I do not agree that the Court now has the power or authority to do other than as directed by the remand of the Court of Appeals. When that Court wrote "in camera" it meant "in camera," or privately, that is to say, *ex parte.* That they were wrong might well be argued, but that they are in charge may not be gainsaid by a trial judge, who has the duty to comply with the clearly stated directions of a higher court. *Crane Co. v. American Standard, Inc.,* 409 F.2d 332, 341 (2d Cir. 1973) and cases cited therein. *See Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32, 34 (2d Cir. 1979); *United States v. Cirami,* 563 F.2d 26, 32–33 (2d Cir. 1977); *United States v. Fernandez,* 506 F.2d 1200, 1202–03 (2d Cir. 1974); *Munro v. Post,* 102 F.2d 686, 688 (2d Cir. 1939).

The Government also denies that Mr. Lynch is now possessed of an adequate security clearance. This presents a factual issue which cannot be resolved by affidavit. For purposes of this motion the Court will infer that Mr. Lynch's statement that he is cleared is accurate, or if it is not, his office can find some other lawyer to act in the matter who is or will be properly cleared.

Of course on a descending scale of evils upon which matters formerly regarded as constitutional absolutes or natural rights are now being made the subject of judicial "balancing tests," it is probably less evil to allow the lawyer for a party who holds a security clearance to participate in an *in camera* proceeding under a protective order, than it is to restrict access to the adverse party and the judge. Because of a preference for the lesser evil, we would probably allow such participation by Mr. Lynch, given that secret judicial proceedings have to be employed.

■ This is not to endorse the "lesser evil" as an appropriate practice. First, it assumes that by a protective order the security-cleared attorney may be prevented by the Court, from discharging the duty of undivided loyalty which he owes his uncleared client, because of the conflicting duty he owes the Court. No man may serve two masters.[2] No attorney should place himself in a position in which full and fair communication with the client is inhibited by confidences owed to others. Secondly, security clearance, which may be general or limited, is not a right, but a boon granted by the executive branch. It is withheld, often on an unarticulated basis, not only from those who are disaffected or disloyal, but also from those whose personal habits make them vulnerable to blackmail, duress or alcoholism, and from ordinary blabbermouths. By the suggested practice, a Court is being asked to discriminate among those lawyers, all of whom are equally entitled to practice before it, in favor of those who happen to enjoy such clearance. This detracts from the professional standing of those not so cleared, and limits the freedom of choice of a lawyer by litigants.

Because the granting or withholding of a Security Clearance is, as defendant correctly states, a "prerogative" of the executive branch of Government, to condition the right to appear in a given case upon a lawyer becoming the beneficiary of favorable exercise of that prerogative allows an undue intrusion into the internal conduct by the judicial branch of the trial of cases, and the judicial decision as to what person may try what case.[3]

The Court is prepared to allow Mr. Lynch or another lawyer having a proper clearance to participate under a protective order

---

2. "For either he will hate the one and love the other; or else he will hold to the one and despise the other," Matthew 6:24; Luke 16:13. A man who has a watchdog should not try to do his own barking, and one who has a lawyer should not try to do his own litigating. If, having viewed the Top Secret affidavit *in camera* under a protective order, it appears all compelling, and plaintiff's counsel thereafter advises him to drop the case, and the client asks "why?", how will he answer? How can he answer?

3. The various judicial opinions which entrust Top Secret material to judges for their *ex parte* consideration in deciding a lawsuit seem to assume that by having taken the constitutional oath following presidential appointment and senatorial confirmation, a judge possesses some mystical equivalent to security clearance.

if he or she still wishes to do so, in light of the foregoing, and if the mandate of the Court of Appeals is amended to allow it. Pending such amendment, the motion is denied solely for want of power. The Court will defer its visit to the star chamber, in this case, the office safe of the Hon. John S. Martin, Jr., where the Top Secret affidavit is now ensconced, for a period of twenty (20) days, or longer if requested, to allow such application to be made.

So ordered.