**William A. DAVY, Jr., Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**No. 00–2134 (RJL).**

United States District Court, District of Columbia.

July 7, 2004.

James Hiram Lesar, Washington, DC, for Plaintiff.

Edith M. Shine, Charlotte A. Abel, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the defendant's motion for summary judgment, and the plaintiff's cross-motion for summary judgment and to compel further searches for responsive documents. This action concerns requests made by the plaintiff, William A. Davy, Jr., under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents in the possession of the Central Intelligence Agency ("CIA") regarding two CIA projects, Project QKEN-CHANT and Project ZRCLIFF. The CIA moves for summary judgment on the grounds that it has conducted an adequate and thorough search for responsive documents, has released all responsive documents that it has identified, except for those records withheld under a valid claim of exemption, and has provided a thorough *Vaughn* index describing the documents withheld in part or in whole.[1] Davy cross-

---

1. Before the Court is the CIA's superseding motion for summary judgment. The CIA filed a motion for summary judgment on the limited issue of whether it was obligated to search its operational files for documents responsive to Davy's request on May 28, 2002. After filing eight motions to revise the briefing schedule, each of which was granted by the Court, Davy filed a cross-motion for summary judgment and to compel further searches on October 2, 2002. As Davy's motion addressed issues beyond the scope of the CIA's May 28, 2002 motion, the CIA filed a superseding motion for summary judgment, addressing the remaining issues, on February 13, 2003. The

moves for summary judgment and to compel further searches for responsive documents on the grounds that the CIA has improperly restricted the scope of its search for documents, has not produced documents that are clearly referenced in records already released to the Davy, and has not produced documents currently being processed under the John F. Kennedy Assassination Records Collection Act of 1992 ("JFK Act"), 44 U.S.C. § 2107.[2] For the following reasons, the Court DENIES the plaintiff's cross-motion for summary judgment. The Court GRANTS the defendant's motion for summary judgment.

### Background

I. *Factual Background: William A. Davy, Jr. and Projects QKENCHANT and ZRCLIFF*

The plaintiff, William A. Davy, Jr., is the author of a book concerning the investigation by New Orleans District Attorney Jim Garrison into the assassination of President John F. Kennedy. The specific subject of Davy's book is the trial of Clay Shaw, an individual alleged to have been a CIA contact and charged with conspiring to assassinate President Kennedy. Davy seeks information related to two CIA projects, Project QKENCHANT and Project ZRCLIFF. QKENCHANT is the name of a CIA project used to provide security approvals for non-agency personnel to meet and discuss proposed projects, activities, and relationships with CIA personnel. Pl. Cross–Mot. for Summ. J. 2–3; McNair Decl. ¶ 12. ZRCLIFF is a cryptonym for Southern Air Transport ("SAT"), a CIA proprietary airline. Pl. Cross–Mot. for Summ.J. 5; McNair ¶ 12. Davy believes documents relating to QKENCHANT and ZRCLIFF, including documents discussing various individuals who received security clearance through QKENCHANT and had involvement with ZRCLIFF, will confirm that Clay Shaw was a CIA contact in New Orleans and was deeply involved in CIA operations in Cuba. Pl. Cross–Mot. for Summ. J. 2, 5.

II. *Procedural Background: 1994 and 2000 FOIA Requests*

Davy's initial complaint in this case concerned a FOIA request he made on December 13, 1993, seeking documents regarding QKENCHANT AND ZRCLIFF, which was received on December 22, 1993 and accepted by the CIA on January 3, 1994 ("the 1994 FOIA request"). The CIA informed Davy that it could not complete its search for responsive documents within the statutory period and advised him of his right to appeal on January 31, 1994. Davy did not appeal at that time and on November 22, 1999, the CIA advised Davy that it

---

CIA's May 28, 2002 motion for summary judgment is moot.

The CIA indicates that it believed Davy would withdraw his cross-motion and would instead respond to the superseding motion for summary judgment. Def.Super. Mot. for Summ. J. 1 n. 1. Although the Court granted Davy's four motions to revise the briefing schedule following the filing of the defendant's superseding motion, Davy neither withdrew the cross-motion nor responded to the superseding motion. Close to a year and a half later, after the CIA moved for the Court to grant its superseding motion as granted, Davy's counsel moved for yet another extension of time to respond, on the grounds that he was completing work in other cases. As Davy's counsel has presented no justifiable excuse for the failure to respond to the CIA's motion, the Court will deny the three motions for extension of time to respond. However, the Court will consider Davy's previously filed cross-motion for summary judgment and to compel further searches and the defendant's superseding motion for summary judgment.

2. Davy also asserted that a *Vaughn* index must be filed before the Court could grant summary judgment in this case. Pl. Cross–Mot. for Summ. J. 21. The CIA filed a *Vaughn* index on February 13, 2003 and this argument is thus moot.

could neither confirm nor deny the existence of the requested records. Davy appealed this response by the agency and on June 20, 2000, the CIA denied his appeal. Davy filed the present action on September 5, 2000. On October 25, 2000, the CIA moved for dismissal of Davy's initial complaint on the grounds that the statute of limitations on his claim had run.

On November 16, 2000, prior to a ruling on the motion to dismiss, Davy submitted a second FOIA request to the CIA ("the 2000 FOIA request"), similarly requesting documents related to QKENCHANT and ZRCLIFF, and also seeking records regarding the CIA's processing of the 1994 FOIA request. On December 15, 2000, District Judge Royce C. Lamberth, initially assigned to this case, granted the CIA's motion to dismiss the complaint without prejudice. Davy subsequently filed an Amended Complaint on January 2, 2001.[3] On May 7, 2001, Judge Lamberth ordered the CIA to provide Davy with (1) any responsive documents based on the 1994 FOIA request, no later than April 30, 2001; (2) any responsive documents based on his 2000 FOIA request, no later than May 31, 2001; and (3) any responsive documents regarding searches conducted in response to his 1994 request, no later than July 31, 2001.

The CIA began releasing documents to Davy on April 24, 2001. In its first response, the CIA indicated that it had not found any documents concerning QKENCHANT, but had found six documents concerning ZRCLIFF. Def.Super. Mot. to Dismiss 2–3. Of these six documents, the CIA produced one with redactions and withheld the other five under FOIA exemptions (b)(1) and (b)(3). The CIA also released six documents mentioning QKENCHANT and nine documents mentioning ZRCLIFF that had been released

to the public under the JFK Act, totaling 148 pages. *Id.* at 3. The CIA noted in this response that further review and release of documents under the JFK Act might result in the future release of additional records mentioning ZRCLIFF and QKENCHANT. Def.Super. Mot. for Summ. J. 3.

On July 25, 2001, the CIA issued its second response, pertaining to the Davy's request for records on the processing of his 1994 request. The CIA indicated in this second response that it had located seventy responsive documents. Ten documents were produced in full and fifty-one documents were produced with redactions. Nine documents were withheld in their entirety under FOIA exemptions. *Id.* at 4. On January 21, 2003, the CIA supplemented it first response and informed Davy that it had located five additional responsive documents, three of which had only become retrievable as a result of being newly entered in a text-based searching system. *Id.* The other two documents had been previously retrieved for Davy, but had inadvertently not been provided to him. *Id.* On February 13, 2003, the CIA filed a *Vaughn* index, describing each responsive document it had found and explaining the basis for redacting or withholding any of these documents.

The CIA asserts that it has conducted a thorough search in response to Davy's requests and has produced all responsive documents not subject to FOIA exemptions. Accordingly, the defendant seeks dismissal of this action. In his cross-motion, Davy first argues that the CIA has failed to conduct an adequate search for responsive records because the CIA is obligated to search its operational files. He also contends that the CIA has placed an unacknowledged limit on the scope of its

---

**3.** Judge Lamberth also dismissed paragraphs 4–14 of the Amended Complaint because they restated the initial complaint, which had been dismissed as untimely.

search because ZRCLIFF, a proprietary airline, would have corporate documents, which have not been produced. Davy further argues that the CIA has failed to produce documents referenced in responsive records that have already been provided to him and also documents that will be released to the public in the future under the JFK Act. Accordingly, Davy moves for summary judgment to be granted in his favor and for the CIA to be compelled to conduct further document searches.

### Discussion

#### I. Standard of Review

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." See Celotex v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' ") Id. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)). The court must view the facts in the light most favorable to the non-movant, giving the non-movant the benefit of all justifiable inferences derived from the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### II. Adequacy of the CIA's Search

■■■ Before the Court can address the applicability of FOIA exemptions, it must first assess whether the agency's search for responsive documents was adequate. While there is no requirement that an agency search every record system in response to a FOIA request, Meeropol v. Meese, 790 F.2d 942, 952–53 (D.C.Cir. 1986), an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested. Oglesby v. U.S. Department of the Army, 920 F.2d 57, 68 (D.C.Cir.1990). The government is entitled to summary judgment on the adequacy of its search if it can show that it made a good faith effort to conduct the search, using methods that could reasonably be expected to produce the information requested. Id. (citing Weisberg v. U.S. Department of Justice, 745 F.2d 1476, 1485 (D.C.Cir.1984)).

The CIA puts forth the declaration of William H. McNair, the Information Review Officer ("IRO") for the Directorate of Operations of the CIA, to establish the adequacy of its search. McNair states that all five components of the CIA[4] were requested to conduct a search in response to Davy's request. McNair Decl. ¶¶ 27–32. The five components were instructed to search for documents on QKENCHANT, ZRCLIFF, ENCHANT, QK/ENCHANT, and ZR/CLIFF. Id. at ¶ 27. In addition, CIA officers searched two corporate databases, the Management of Officially Released Information ("MORI") and Electronic Records WEB Interface ("ERWI"),

---

4. McNair explains in the declaration that all CIA records are maintained by one of five directorates or offices: the Directorate of Science & Technology (DS & T), the Directorate of Operations (DO), the Directorate of Intelligence (DI), the Mission Support Offices (MSO), and the Director of Central Intelligence Area (DCI Area). McNair Decl. ¶ 26.

for responsive information. *Id.* at ¶¶ 27, 33. Both of these databases contain records under review for declassification and release to the public. *Id.* at ¶ 33.

Davy asserts that CIA's search was not adequate because it failed to search its operational files and has "placed an unacknowledged limitation on the scope of his request, restricting it to records it considers relevant to the Kennedy assassination." Pl. Cross–Mot. for Summ. J. 12. He further claims that the CIA's search was not adequate because it has not produced documents and information referenced in the records already produced to him. *Id.* at 13.

## A. *Operational Files*

■ With regard to the obligation to search its operational files, the CIA asserts that it did not search these files because they are statutorily exempted by the CIA Information Act, 50 U.S.C. §§ 431–32. Def.Super. Mot. for Summ. J. 8–9. The CIA Information Act provides in relevant part that "[o]perational files of the Central Intelligence Agency may be exempted by the Director of Central Intelligence from the provisions of section 552 of title 5 (Freedom of Information Act) which require publication or disclosure, or search or review in connection therewith." 50 U.S.C. § 431(a). "Operational files" are defined to include "the files of the Directorate of Operations which document

the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services." 50 U.S.C. § 431(b)(1). The CIA argues that the Director of Central Intelligence ("DCI") exempted its operational files from FOIA searches in 1995. McNair Decl. ¶ 64. Furthermore, McNair asserts that he has personally determined that any such operational files likely to contain information responsive to Davy's request satisfy the definition of "operational files" under the CIA Information Act. *Id.*

Davy contends that under the CIA Information Act, the DCI does not have discretion to exempt operational files from disclosure where the request is for information that is—

> [T]he specific subject matter of an investigation by the intelligence committees of the Congress, the Intelligence Oversight Board, the Department of Justice, the Office of General Counsel of the Central Intelligence Agency, or the Office of the Director of Central Intelligence for any impropriety or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity. 50 U.S.C. § 431(c)(3).[5]

According to Davy, this exception to the DCI's discretion applies in this case because the assassination of President Ken-

---

**5.** The CIA Information Act sets forth three exceptions to the DCI's discretion to exempt the CIA's operational files from disclosure under FOIA. 50 U.S.C. § 431(c). Operational files "shall continue to be subject to search and review for information concerning—

(1) United States citizens or aliens lawfully admitted for permanent resident who have requested information on themselves pursuant to the provisions of section 552 of title 5 (Freedom of Information Act) or section 552a of title 5 (Privacy Act of 1974);

(2) any special activity the existence of which is not exempt from disclosure under

the provisions of section 552 of title 5 (Freedom of Information Act); or

(3) the specific subject matter of an investigation by the intelligence committees of the Congress, the Intelligence Oversight Board, the Department of Justice, the Office of the General Counsel of the Central Intelligence Agency, the Office of the Inspector General of the Central Intelligence for any impropriety, of violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity." 50 U.S.C. § 431(c).

nedy was investigated by the Warren Commission, the Department of Justice, and the Office of the General Counsel of the CIA. Pl. Cross–Mot. for Summ. J. 7–8. Furthermore, he argues that the House Select Committee on Assassinations ("HSCA") investigated an incident in which Clay Shaw was alleged to have been in the company of Lee Harvey Oswald at a voting rights demonstration in 1963. *Id.* at 8–9. Davy appears to be arguing that because these committees may have touched on the relationship of Clay Shaw to the CIA and Lee Harvey Oswald, the CIA was obligated to search its operational files pursuant to his request. The Court disagrees.

In putting forth a detailed discussion of Clay Shaw's relationship to the CIA and Lee Harvey Oswald, Davy appears to overlook a key fact: that Projects QKENCHANT and ZRCLIFF, *not* Clay Shaw, were the subject of his FOIA request. Assuming *arguendo* that the Warren Commission and HSCA could be considered "intelligence committees" under 50 U.S.C. § 431(c)(3), Davy fails to put forth a scintilla of evidence that Projects QKENCHANT or ZRCLIFF were ever the specific subject of an investigation by these commissions, or by any other entities set forth under the CIA Information Act, for impropriety or violations of the law. Moreover, even if Davy had put forth evidence tending to show that these CIA projects were somehow tangentially related to the Kennedy assassination, "a congressional investigation that touches on CIA conduct in a particular incident or region, standing alone, is not sufficient to warrant the release of all CIA documents" regarding such an incident or region. *Sullivan v. CIA*, 992 F.2d 1249, 1255 (1st Cir.1993). "It is simply not enough that information which bore in some remote way on the request surfaced in the course of an investigation." *Id.* Rather, the information requested must have been the spe-

cific subject of an investigation. Accordingly, the Court finds that the CIA was justified in exempting its operational files from the search in response to Davy's FOIA requests.

**B.** *Alleged Limitation of the Scope of the CIA's Search*

■ The Court further finds that Davy's claim regarding an "unacknowledged" limit placed on the scope of the CIA's search also lacks merit. Davy asserts that the CIA must have limited the scope of the search because ZRCLIFF, the proprietary airline, must have had corporate documents such as lists of directors and shareholders, none of which were produced to him. Pl. Cross–Mot. for Summ. J. 12. However, Davy presents no basis for his speculation that ZRCLIFF must have been structured like a corporation so that such documents would even exist. Absent any stated basis for his belief that such documents exist and that the CIA has placed a secret limit on its search that would create a genuine issue of material fact, the Court rejects Davy's argument, especially in light of the CIA's representation that each of its five departments were requested to search for any documents on "QKENCHANT, ZRCLIFF, ENCHANT, QK/ENCHANT, and ZR/CLIFF." McNair Decl. ¶ 27.

**C.** *Documents Referenced in Documents Already Disclosed*

Davy's third challenge to the adequacy of the CIA's search is that the records already produced to him reference other documents or information that have not been provided to him. Accordingly, he believes the failure to produce these cross-referenced materials raises a material issue of fact warranting further document searches. Pl. Cross–Mot. for Summ. J. 13. Davy enumerates these referenced docu-

ments and information in his Local Rule 7.1(h) statement. For example, Davy alleges that a "December 29, 1967 memorandum for Special Assistant to the DDS (Deputy Director of Security), says that on May 26, 1966 HBLIKA requested clearance to use an individual named Norman Leslie Bradley for SAT. Neither the request nor any response to the request has been provided." Pl. Local Rule 7.1(h) Statement 2. In another paragraph, he states that a "January 4, 1968 cable from JMWAVE to the DCI refers to a WODISH memorandum...which indicates that Bradley is an unscrupulous adventurer. There are no documents supporting this characterization." *Id.* at 3. As illustrated by these examples, Davy seeks not only specific documents referenced, but also any materials that may exist on events that are referenced in the records.

■ The D.C. Circuit has held that FOIA does not place upon an agency the burden to "examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail." *Steinberg v. U.S. Department of Justice*, 23 F.3d 548, 552 (D.C.Cir.1994); *see also Rothschild v. Department of Energy*, 6 F.Supp.2d 38, 40 (D.D.C.1998) ("Perfection...is not the standard, and the government's failure to locate two responsive documents does not defeat the government's showing—which is not otherwise challenged—that its search was adequate."). Thus, even if there are records referenced in the materials already produced to Davy that were not produced, this fact alone would not defeat the CIA's claim that it conducted an adequate

search. Moreover, FOIA cannot be used to troll for documents, which, if they even exist, appear barely tangential to the subject of Davy's requests and thus unlikely to have been revealed even by the most diligent search. In light of the CIA's detailed affidavit, which identifies the search methods and specific terms used to locate responsive documents, the Court finds that the CIA has demonstrated that it made a good faith effort to search all five of its components to produce the information Davy requested. Accordingly, the CIA's motion for summary judgment as to the adequacy of its search is granted.

### III. FOIA Exemptions: 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), and (b)(6)

■ The CIA has also moved for summary judgment because it withheld records that are appropriately exempted from disclosure under FOIA and it has justified the exemptions claimed in the McNair declaration and the attached *Vaughn* index.[6] Summary judgment is warranted where the agency describes "the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Miller v. Casey*, 730 F.2d 773, 776 (D.C.Cir.1984); *Wheeler v. CIA*, 271 F.Supp.2d 132, 136 (D.D.C.2003). It is the burden of the CIA to establish that any exemption from disclosure applies. 5 U.S.C. § 552(a)(4)(B). However, the Court is to accord "substantial weight" to an agency's affidavit concerning the details of the classified status of a disputed rec-

---

**6.** The D.C. Circuit held in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), that there is no set form for an index compiled in response to a FOIA request. However, three important elements are (1) that the index is one document, (2) the index must adequately describe the withheld documents or deletions, and (3) the index must state the particular FOIA exemption and explain why the exemption applies. *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C.Cir.1979).

ord. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981).

The CIA invokes the following four FOIA exemptions in its index: (1) 5 U.S.C. § 552(b)(1) ("exemption (b)(1)"); (2) 5 U.S.C. § 552(b)(3) ("exemption (b)(3)"); (3) 5 U.S.C. § 552(b)(5) ("exemption (b)(5)"); and (4) 5 U.S.C. § 552(b)(6) ("exemption (b)(6)").

## A. *Exemption (b)(1)*

■ Exemption (b)(1) provides that the disclosure requirements of FOIA do not apply to records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The CIA indicates that it has exempted a number of documents in reliance on Executive Order No. 12958, 60 F.R. 19825 (1995). Executive Order No. 12958 prescribes "a uniform system for classifying, safeguarding, and declassifying national security information." Section 1.5 of Executive Order No. 12958 sets forth seven classification categories for information, and Section 3.2(b) provides that "[i]t is presumed that information that continues to meet the classification requirements under this order requires continued protection." §§ 1.5, 3.2(b).

The CIA asserts that the information Davy seeks falls into at least two of these seven categories: (1) intelligence activities (including special activities), intelligence sources or methods, or cryptology; and (2) foreign relations or foreign activities of the United States including confidential sources. §§ 1.5(c)-(d). McNair indicates in his affidavit that under the CIA's FOIA and Privacy Act Declassification Review Program, reviews of information are conducted to determine whether information is currently and properly classified under Executive Order No. 12958 or predecessor

orders. McNair Decl. ¶ 37. He also states that he has determined that the information withheld under exemption (b)(1) is classified and meets the substantive standards for classification set forth in Executive Order No. 12958. McNair Decl. ¶ 37, 40. In its *Vaughn* index, the CIA has designated which documents were withheld pursuant to exemption (b)(1) and has provided the classification level, when appropriate, for each document. For instance, Document 11, exempted under (b)(1), is described as a two-page internal form, dated August 4, 1995, that was classified as "Secret" under Executive Order No. 12958 in the interest of national security. In the absence of any specific challenge by Davy with regard to the CIA's claims under exemption (b)(1), the Court finds that the CIA has met its burden of demonstrating that it applied exemption (b)(1) to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national security or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . ." *Hayden v. National Security Agency*, 608 F.2d 1381, 1386–87 (D.C.Cir.1979).

## B. *Exemption (b)(3)*

■ Exemption (b)(3) exempts from disclosure any matters that are "[s]pecifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The CIA has withheld a number of documents based on the requirements of two statutes, the National Security Act of 1947, 50 U.S.C. § 403–3(c)(7), which requires the DCI to protect intelligence sources and methods from unautho-

rized disclosure, and the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 U.S.C. § 403(g), which provides that the CIA shall be exempt from the provision of any other law requiring the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the CIA. Def.Super. Mot. for Summ. J. 22–23; McNair Decl. ¶ 41. The Supreme Court held in *CIA v. Sims* that the National Security Act and the CIA Act are "withholding statutes" for the purposes of exemption (b)(3). 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). The Supreme Court stated: "The national interest sometimes makes it advisable or even imperative, to disclose information that may lead to the identity of intelligence sources. And it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process." *Id.* at 180, 105 S.Ct. 1881.

McNair's affidavit describes in some detail how the disclosure of intelligence methods would be of material assistance to those who seek to penetrate, detect, prevent, or damage intelligence operations in the United States. McNair Decl. ¶ 42–51. Specifically, he states that information containing cryptonyms, words, and letter codes that are substituted for actual names or identities constitute an intelligence method that the DCI protects from disclosure. *Id.* at ¶ 50. McNair also describes how CIA employee names, identifiers, titles, filing instructions, and organizational data are also protected from disclosure because the release of such information would compromise intelligence operations, put the lives of CIA personnel in jeopardy, and could also tend to reveal the structure of the CIA's records systems. *Id.* at ¶ 54. Accordingly, the CIA has redacted docu-

ments or withheld documents responsive to Davy's request that contain such information. *See, e.g., Vaughn* Index, Document 14 (CIA employee names, initials, signatures redacted). The Court finds that the CIA has properly asserted exemption (b)(3) to withhold information regarding CIA intelligence methods, personnel, and organizational data.

### C. *Exemption (b)(5)*

 Exemption (b)(5) provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are exempted from disclosure under FOIA. 5 U.S.C. § 553(b)(5). This exemption has been construed to apply to documents that would be subject to the attorney-client and work product privileges in the context of civil discovery. *N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Tax Analysts v. I.R.S.*, 294 F.3d 71, 76 (D.C.Cir.2002). This exemption, known as the "deliberative process privilege," also protects from disclosure those documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Home Builders Assoc. v. Norton*, 309 F.3d 26, 39 (D.C.Cir. 2002) (citing *Petroleum Information Corp. v. U.S. Department of the Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992)). Information is exempt only if it is both "predecisional" and "deliberative." *Id.* Documents are "predecisional" if they are prepared to assist the agency decisionmaker in arriving at a decision, rather than to support a decision already made. *Id.* Documents are "deliberative" if they reflect the "give-and-take of the consultative process." *Id.* This exemption ensures that those in advisory roles are able to express their opinions freely to agency decision-makers without

fear that public disclosure would "inhibit frank discussion of policy matters and likely impair the quality of decisions." *Bureau of Nat'l Affairs, Inc. v. U.S. Department of Justice,* 742 F.2d 1484, 1497 (D.C.Cir.1984).

The CIA has invoked exemption (b)(5) to withhold documents containing recommendations or opinions of agency personnel on matters preceding final agency action and also documents that are subject to the attorney-client and work product privileges. Def.Super. Mot. for Summ. J. 26. McNair states in his affidavit that the CIA exempted documents subject to privilege, such as candid remarks and legal advice from agency counsel regarding the strategy for handling legal matters, as well as advice provided in anticipation or during the course of litigation. McNair Decl. ¶ 57. McNair also states that the CIA has withheld documents reflecting the agency's deliberative process, such as draft responses, recommendations, and proposed answers to agency issues. *Id.* at ¶ 58. Furthermore, in its *Vaughn* index, any documents withheld on the basis of exemption (b)(5) are described as containing either predecisional and advisory information or information subject to the attorney-client privilege. *See, e.g., Vaughn* Index, Document 27 (two-page memorandum regarding "JFK and litigation" from which information that was advisory in nature was redacted); Document 38 (one-page record regarding a communication from a CIA attorney). The Court finds that, in the absence of a specific challenge by Davy creating a genuine issue of material fact, the CIA has met its burden in establishing the basis for withholding documents under exemption (b)(5).

D. *Exemption (b)(6)*

█ Exemption (b)(6) provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may be exempted from disclosure under FOIA. 5 U.S.C. § 552(b)(6). With regard to the meaning of the term "similar files," the Supreme Court has stated that exemption (b)(6) was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Department of State v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (citing H.R.Rep. No. 1497). To properly invoke Exemption 6, the agency must show that the information applies to a particular individual and is thus personal in nature. *New York Times Co. v. NASA,* 852 F.2d 602, 606 (D.C.Cir.1988). The Court must then strike a proper "balance between the protection of an individual's right to privacy and the preservation of the public's right to Government information..." *Washington Post Co.,* 456 U.S. at 599, 102 S.Ct. 1957; *Hornbostel v. U.S. Department of the Interior,* 305 F.Supp.2d 21, 34 (D.D.C.2003). The analysis of the "public interest" necessarily focuses on the core purpose for which FOIA was enacted, that is, to "shed[ ] light on an agency's performance of its statutory duties..." *U.S. Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

The CIA has invoked exemption (b)(6) to protect information concerning the names of and identifying information regarding CIA employees. Def.Super. Mot. for Summ. J. 28. The CIA argues that a privacy interest clearly exists because the withheld information would identify CIA employees. *Id.* Furthermore, the CIA asserts the public interest in having access to this information is weak because it would shed no light on the performance of governmental duties and thus, the balance "tilts heavily" against disclosure. *Id.* at 29. Although as previously noted, Davy did not respond

to the defendant's superseding motion for summary judgment and has thus not specifically challenged this exemption, the Court finds that a balancing of the personal privacy of CIA personnel and a consideration of public interest weighs in favor of exemption. Throughout Davy's pleadings, it is clear that the focus of his request for documents is to delve further into the subject of his book, i.e., the relationship of Clay Shaw to the Kennedy assassination and the CIA. Nowhere in his pleadings does Davy suggest even the slightest concern for exposing the inner workings of the CIA. Moreover, he fails to demonstrate how his personal crusade to unearth this information relates in any way to a cognizable public interest. Especially where the agency is seeking to withhold such a narrow category of information, and with many of the responsive documents, has merely redacted the personal information and has produced the remainder of the record to Davy, see, e.g., Documents 1, 2, the Court cannot find that the public interest in opening up agency action to public scrutiny demands disclosure in this case.

### IV. Documents to be Released under the JFK Act

In his cross-motion for summary judgment, Davy makes a final challenge to the CIA's production of documents on the grounds that "the CIA has admitted that there are additional records on QKEN-CHANT and ZRCLIFF which it has not provided." Pl. Cross–Mot. for Summ. J. 11. Thus, he contends that the agency's April 24, 2001 response, indicating that there may be additional responsive documents that will be released through the National Archives and Records Association ("NARA") following processing pursuant

to the JFK Act, is evidence that responsive documents have not been produced to him. Id.[7]

■ As an initial matter, this Court notes that the D.C. Circuit held in *Assassination Archives and Research Center v. Department of Justice* that the JFK Act does not create any private right of action that would entitle FOIA litigants to employ JFK standards to a FOIA review of documents. 43 F.3d 1542, 1544–45 (D.C.Cir.1995). Rather, the JFK Act and FOIA are separate statutory structures with separate standards and enforcement mechanisms. *Id.* Thus, to the extent that Davy is attempting to argue that the JFK Act somehow subjects the CIA to an obligation to engage in a broader search for responsive documents or produce documents exempted under FOIA, he is mistaken.

Furthermore, to the extent that Davy is arguing that the CIA has withheld documents that are not subject to any FOIA exemptions and will eventually be released to the public pursuant to the requirements of the JFK Act, the facts put forth by the CIA appear to dispute this. The CIA states that at the time it issued its first response to Davy's request, there were two categories of information that might have contained responsive documents that had not yet been released to the public under the JFK Act. Def.Super. Mot. for Summ. J. 3 n. 3. The first category includes documents that have been identified as containing sensitive intelligence information, scheduled for release no later than 2017. However, McNair states that the original files from which this group of documents originated were searched for documents responsive to Davy's requests. McNair Decl. ¶ 17. The second category,

---

7. The JFK Act requires that records related to President Kennedy's assassination be transferred to the National Archives where they are to be made publicly available, subject to certain conditions. 44 U.S.C. § 2107.

to which the CIA's April 24, 1997 response referred, includes administrative files gathered or obtained by the CIA in the course of implementing the JFK Act (*e.g.*, requests from the Assassination Records Review Board established under the JFK Act), which constitute a record of the agency's compliance with the statute. *Id.* at ¶ 18. These documents have not yet been released to the public, but have been scanned into a text-based-retrievable database. Subsequent to the April 24, 1997 response, the CIA searched this database for responsive documents and produced several documents to Davy. Def.Super. Mot. for Summ. J. 3 n. 3. Thus, the CIA appears to have searched the documents in these two categories of records subject to JFK Act processing and produced any documents not subject to exemptions. Based on these facts, the Court concludes that the CIA has not improperly withheld responsive documents that would eventually have been released under the JFK Act.

Accordingly, as the Court finds that the CIA conducted an adequate search and has demonstrated that it properly invoked FOIA exemptions to justify withholding documents in part or in whole from disclosure, the Court will GRANT the defendant's superseding motion for summary judgment and DENY the plaintiff's cross-motion for summary judgment.

### ORDER

For the reasons set forth above, it is this 7th day of July, 2004, hereby

**ORDERED** that the defendant's Motion for Summary Judgment [# 30] is DENIED as moot;

**ORDERED** that the defendant's Superseding Motion for Summary Judgment [# 60] is **GRANTED**; and it is further

**ORDERED** that the plaintiff's Cross-Motion for Summary Judgment [# 65] is **DENIED**; and it is further

**ORDERED** that the plaintiff's Motions for Extension of Time to Respond [# 75, 76, 77] are **DENIED**;

**ORDERED** that the above-captioned action shall be dismissed.

**SO ORDERED.**